UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re MELANIO LOLARGA VALDELLON, III, et al.,<br><br>　　　　Debtors. | District Case No.  2:21-cv-01840-DJC<br><br>Bankr. Case No. 14-22555-B-13<br><br>Bankr. Adversary Case No. 21-2008 |
| MELANIO LOLARGA VALDELLON, III, et al.,<br><br>　　　　Appellants,<br><br>　　v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>　　　　Appellees. | ORDER |

　　　　Pending before the Court is Debtors Melanio Lolarga Valdellon, III and Ellen Cruz Valdellon's appeal of the Bankruptcy Court's order in Bankruptcy Adversary Proceeding No. 21-2008 dismissing their First Amended Complaint ("FAC").  (*See* ECF No. 1.)

　　　　The Court held a hearing on this matter on November 16, 2023, with Mark Wolff appearing for Debtors, and Neil Cooper appearing for Appellees.  Having reviewed the Parties' briefings and arguments, this Court hereby AFFIRMS the Bankruptcy Court's dismissal of Debtors' claim under 11 U.S.C. § 524(a) with prejudice.  With respect to the Debtor's claim under 11 U.S.C. § 524(i), the Court

concludes the Bankruptcy Court properly dismissed the claim as pled, but finds that Debtor's should be given leave to amend, and accordingly REVERSES the Bankruptcy Court's dismissal of Debtors' claim under 11 U.S.C. § 524(i) with prejudice.  The Court also REVERSES the Bankruptcy Court's dismissal of Debtors' related state law claims for intentional infliction of emotional distress and negligent infliction of emotional distress with prejudice.  Finally, the Court GRANTS Debtors leave to amend their FAC within 30 days and REMANDS this matter to the Bankruptcy Court for further proceedings consistent with this order.

## BACKGROUND

### I.     The Loan, Plan, and Payments

In 2005, Debtor Melanio Valdellon obtained a loan ("Loan") secured by a deed of trust against Debtors' real property in Roseville, California; the Loan is owned by Appellee Wells Fargo Bank, N.A., as Indenture Trustee Under the Indenture Relating to IMPAC CMB Trust Series 2005-6, and is serviced by Appellee PHH Mortgage Corporation[1] (f/k/a Ocwen Loan Servicing, LLC) ("PHH").  (First Am. Compl. ("FAC") (ECF No. 7-160) at 1645–46[2]; Pet. (ECF No. 7-1) at 32; Proof of Claim 9-1 (ECF No. 7-93); Transfer of Claim (ECF No. 7-49).)

Debtors filed a Chapter 13 bankruptcy on March 13, 2014.  (FAC at 1646; Pet.)  Debtors' then-counsel filed a proof of claim for the Loan ("Claim 9-1"), which listed the arrearage on the Loan at $19,140.48.  (Proof of Claim 9-1.)  Throughout the course of their bankruptcy, Debtors obtained confirmation of several Chapter 13 plans, all of which treated the Loan as a secured claim under 11 U.S.C. § 1322(b)(5) and provided for both the cure of pre-petition defaults on the Loan and ongoing monthly payments to keep the Loan current.  (Debtors' Br. (ECF No. 8) at 13–14; First Plan (ECF No. 7-3)

---

[1] As Appellees note in their corporate disclosure, they were erroneously sued as PHH, Wells Fargo Bank, N.A., IMPAC CMB Trust Series 2005-6, and Wells Fargo Bank, N.A. as Trustee of IMPAC CMB Trust Series 2005-6.  (See Appellees' Br. (ECF No. 11) at 2.)

[2] Citations to the record on appeal are to the docket number(s) for Debtors' excerpts of record filed with this Court (ECF No. 7 through ECF No. 7-193) and, where appropriate, the excerpt of record page number.

at 81; First Am. Plan (ECF No. 7-12) at 121; Order Confirming First Am. Plan (ECF No. 7-17); First Mod. Plan (ECF No. 7-20) at 172; Order Confirming First Mod. Plan (ECF No. 7-26); Second Mod. Plan (ECF No. 7-32) at 242–43; Order Confirming Second Mod. Plan (ECF No. 7-35).)  Debtors' operative plan is their June 15, 2018 Second Modified Chapter 13 plan ("Plan"), which was confirmed on August 24, 2018.  (Order Confirming Second Mod. Plan.)  Debtors' Plan provided that the Chapter 13 trustee would pay Appellees $319.01 per month to cure the arrears, and $2,301.55 per month to keep the Loan current,[3] and stated that if the arrears or monthly payment was incorrect Appellees could file an amended proof of claim or notice of payment change pursuant to Fed. R. Bankr. P. 3002.1(b).  (FAC at 1646–47; Second Mod. Plan at 242–43.)

Debtors completed their Plan payments in September 2019 and the trustee filed a Notice of Final Cure on September 27, 2019.  (FAC at 1648; Notice Final Cure (ECF No. 7-42).)  Appellees filed a Response to Notice of Final Cure on October 18, 2019, agreeing that Debtors had cured the arrearage in full and were current on the Loan.  (FAC at 1648; Resp. Notice Final Cure (ECF No. 7-100).)

## II.     Post-Plan Payments and Statements

Following completion of the Plan, Debtors sent monthly payments directly to Appellees beginning in October 2019.  (FAC at 1649–50.)  The monthly statements Appellees sent Debtors during this time indicated significant past unpaid amounts.  (FAC at 1651–53.)  For example, Debtors allege the September 16, 2019 monthly statement indicated a past unpaid amount of $16,183.86, the November 21, 2019 statement indicated a past unpaid amount of $16,220.35, etc.  (*Id.*)  Appellees allege these amounts were due because Claim 9-1 and the Plan understated pre-petition

---

[3] Debtors preceding bankruptcy plans all provided for $319.01 per month to cure the arrears, and $1,784.42 per month to keep the Loan current.  (First Plan at 81; First Am. Plan at 121; First Mod. Plan at 172.)

3

arrears and the post-petition monthly payments.  (Appellees' Br. (ECF No. 11) at 12; *see also* Reply Supp. Mot. Dismiss (ECF No. 7-168) at 1773–74.).

Debtors received a discharge on June 1, 2020, which enjoined creditors from collecting on discharged debts, and the bankruptcy was closed on June 15, 2020. (FAC at 1649; Discharge Order (ECF No. 7-59); Final Decree (ECF No. 7-61).) Although Appellees accepted the October 2019 through June 2020 payments, they did not accept the July 2020 or later payments because they alleged the amount tendered was not sufficient to cure the default on the Loan.  (FAC at 1650–51.) Following the discharge, Appellees sent numerous collection letters to Debtors and began foreclosure proceedings.  (*Id.* at 1652–57; *see also* Debtors' Br. at 23–24.)

**III.  The Adversary Proceeding**

Debtors re-opened their bankruptcy on January 20, 2021 to file an adversary proceeding against Appellees.  (Ex Parte Appl. (ECF No. 7-63); Order Reopening Case (ECF No. 7-64); Compl. (ECF No. 7-103).)  On June 28, 2021, the Bankruptcy Court entered an order directing Debtors to file an amended complaint, noting that the initial complaint failed to separately designate individual causes of action, which was necessary to proceed to trial.  (Order to Amend (ECF No. 7-148).)

Debtors filed their operative FAC on July 13, 2021, which alleged four counts of (1) violations of the discharge order/injunction under 11 U.S.C. § 524 (Count 1), (2) intentional infliction of emotional distress (Count 2), (3) "contract, negligent infliction of emotional distress and/or declaratory relief" (Count 3) and (4) unfair business practices (Count 4).  (*See* FAC at 1657–69.)  Specifically, on their first claim, Debtors alleged they cured the pre-petition arrearages and made all post-petition maintenance payments through September 1, 2019, but that Appellees misapplied their payments made directly after October 1, 2019 to discharged debts in violation of 11 U.S.C. § 524(i), which requires that creditors apply payments according to the bankruptcy plan. (*Id.* at 1657–61.)  Further, Debtors alleged Appellees' post-plan monthly statements indicating a past-due balance and collection efforts violated the

4

discharge order and discharge injunction under 11 U.S.C. § 524(a), which prohibits attempts to collect discharged debts. (*Id.*)

Appellees filed a motion to dismiss on July 26, 2021. (Mot. Dismiss (ECF No. 7-163).) Appellees argued that Debtors' claim under 11 U.S.C. § 524 was procedurally improper as relief could be sought only by way of a contempt motion in the bankruptcy case, not an adversary proceeding. (*Id.* at 1717; P. & A. (ECF No. 7-165) at 1735.) Appellees further argued that Debtors failed to allege (1) a violation of the discharge injunction under 11 U.S.C. § 524(a) because the Loan was not discharged but passed through bankruptcy unaffected, and (2) a failure to credit payments in accordance with the Plan under 11 U.S.C. § 524(i) because the payments Debtors argue were misapplied were made after the Plan was completed. (Mot. Dismiss at 1717; P. & A. at 1736–40.) Finally, Appellees argued that Debtors' state law claims (Counts 2 through 4) were either preempted by bankruptcy law or the Bankruptcy Court was without jurisdiction to hear them. (Mot. Dismiss at 1717; P. & A. at 1740–43.)

### IV. The Bankruptcy Court Order and Judgment

The Bankruptcy Court entered an order granting the motion to dismiss on August 20, 2021. (Mot. Dismiss Order (ECF No. 7-169).) Although the court acknowledged that the appropriate vehicle for alleging a violation of a discharge injunction was a contempt motion in the main bankruptcy case rather than an adversary proceeding, the court found the procedural error harmless and ruled that it had discretion to entertain the adversary complaint.[4] (*Id.* at 1784–85.) Turning to the substance of Debtors' Count 1, the Bankruptcy Court first reasoned that Appellees' collection of post-plan, pre-discharge payments (i.e., payments made after October

---

[4] Debtors also filed a motion for contempt in the main bankruptcy case, *In re Melanio Lolarga Valdellon*, Bankr. Case No. 14-22555-B-13 (Mot. Contempt (ECF No. 7-67)), which the Bankruptcy Court dismissed as moot based on their dismissal of the FAC. (*See* Civil Minutes (ECF No. 7-74); Order Dismissing Mot. Contempt (ECF No. 7-75).) That dismissal is the subject of related appellate proceedings in *Valdellon v. PHH Mortg. Corp. (In re Melanio Lolarga Valdellon, III)*, No. 21-cv-1802 before this Court. (*See* Related Case Order (ECF No. 5).)

5

2019 and through May 2020) could not violate the discharge injunction under 11 U.S.C. § 524(a) because there was no discharge order or injunction to violate during that time. (*Id.* at 1785–86.) The Bankruptcy Court then found that Appellees' collection attempts after the discharge order was entered could not violate the discharge injunction under 11 U.S.C. § 524(a) because the Loan payments remained contractually due and were not discharged in the bankruptcy. (*Id.* at 1786.) Accordingly, Debtors' sole remaining claim for a violation of the discharge injunction was Appellees' alleged failure to credit payments received under the Plan as required by 11 U.S.C. § 524(i). (*Id.*) However, the Bankruptcy Court found that Debtors' allegations concerned payments made in October 2019 and later, not payments made under the Plan. (*Id.* at 1786–87.) Therefore, even accepting all factual allegations as true, the Bankruptcy Court concluded that Debtors had not stated a claim and, as Debtors did not request leave to amend, dismissed the FAC with prejudice. (*Id.* at 1788.)

As to the remaining state law claims, the Bankruptcy Court dismissed them with prejudice to the extent they were based on the purported discharge violation and merely duplicative. (*Id.* at 1788.) For the claims that were not merely duplicative, the Bankruptcy Court found that they did not arise under, arise in, or relate to a bankruptcy case and that the court therefore lacked jurisdiction. (*Id.* at 1789–90.) Finally, the Bankruptcy Court found that, even if it had jurisdiction over the state law claims, abstention from deciding such claims was warranted. (*Id.* at 1790–93.) Accordingly, the Bankruptcy Court dismissed the entirety of the FAC and entered judgment in favor of Appellees. (*Id.* at 1793–94; Judgment (ECF No. 7-171).).

**V.   The Pending Appeal**

Debtors appealed the order granting dismissal on September 1, 2021. (Notice Appeal (ECF No. 7-176).) In short, Debtors argue that the Bankruptcy Court erred (1) in finding that Appellees' post-plan collection actions could not violate the discharge order and injunction under section 524(a) given that Debtors' arrearages

were cured and the Loan was kept current under the Plan; (2) in concluding that misapplication of post-plan payments could not give rise to a violation of section 524(i) when those payments were provided for under the Plan; and (3) in limiting its section 524(i) analysis only to post-plan payments when Debtors allegations indicated payments by the trustee may have also been misapplied. (*See generally* Debtors' Br.)

## LEGAL STANDARD

An appellant may petition the district court for review of a bankruptcy court's decision. Fed. R. Bankr. P. 8013. The applicable standard of review is identical to that employed by circuit courts of appeal in reviewing district court decisions. *See Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). Thus, generally speaking, legal conclusions are renewed on a de novo basis, and factual determinations are assessed pursuant to a "clearly erroneous" standard. *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir. 1997) (en banc).

Rulings on a motion to dismiss are reviewed de novo. *See AE v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). All factual allegations are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *See id.; see also Narayanan v British Airways*, 747 F. 3d 1125, 1127 (9th Cir. 2014). Dismissal without leave to amend, however, is reviewed for abuse of discretion. *AE*, 666 F.3d at 636; *see also Tracht Gut, LLC v Cnty. of Los Angeles (In re Tracht Gut, LLC)*, 503 B. R. 804, 810 (9th Cir. BAP 2014), *aff'd* 836 F.3d 146 (9th Cir. 2016).

## ANALYSIS

### I.   Debtors' Claim under 11 U.S.C. § 524(a)

Debtors challenge the Bankruptcy Court's holding that Debtors failed to sufficiently allege Appellees' post-plan collection of mortgage payments from Debtors violated the discharge injunction under 11 U.S.C. § 524(a) because (1) from October 2019 through May 2020 there was no discharge order and (2) after June 2020 the Loan was not discharged in the bankruptcy. (Mot. Dismiss Order at 1786.)

Bankruptcy affords debtors protection from creditors' attempts to collect debt. When a debtor files for bankruptcy, an automatic stay is imposed, which provides protection from the time a case is filed until entry of discharge or dismissal of the case. 11 U.S.C. § 362(c)(2).  Section 1328(a) of the Bankruptcy Code states that after the payments required under a confirmed Chapter 13 bankruptcy plan are completed, the bankruptcy court, with certain enumerated exceptions, "shall grant the debtor a discharge of all debts provided for by the plan."  11 U.S.C. § 1328(a).  Once discharge is entered, the automatic stay dissolves and the discharge injunction arises to prevent creditors from attempting to collect debts that were discharged.  Section 524(a)(2) of the Bankruptcy Code provides that a discharge:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a).  The discharge injunction prevents virtually all actions by a creditor to collect personally from a debtor, including legal proceedings, letters, phone calls, threats of criminal proceedings, or similar actions.  *See* 3 William L. Norton III, *Norton Bankruptcy Law & Practice 3d* § 58:2 (2023); *see also Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 449 (2004) ("The discharge order releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt.").

There are, however, three statutory provisions that, considered together, remove home mortgages from the discharge provisions of Chapter 13.  First, section 1322(b)(2), the "anti-modification" provision, prohibits a Chapter 13 plan from modifying the rights of the holders of claims secured by home mortgages.  *See Palacios v. Upside Invs. LP (In re Palacios)*, No. CC-12-1502-KiPaTa, 2013 WL 1615790, at *4 (9th Cir. BAP Apr. 15, 2013) ("As a general rule, chapter 13 debtors may not modify the rights of holders of claims secured solely by a security interest in real

property that is the debtor's principal residence."). Section 1322(b)(2)'s broad prohibition of modifications to mortgage agreements is limited, however, by section 1322(b)(5), which permits certain narrow modifications. Section 1322(b)(5), irrespective of the terms of the mortgage contract, allows modification of home mortgages for the purpose of enabling debtors to cure mortgage arrearages and maintain current payments through a Chapter 13 plan. *See Cohen v. Lopez (In re Lopez)*, 372 B.R. 40, 47 (9th Cir. BAP 2007), *aff'd*, 550 F.3d 1202 (9th Cir. 2008). Thus, section 1322(b)(5) gives debtors the opportunity to keep their homes by curing defaults and maintaining payments under the Chapter 13 plan.

Section 1322(b)(5) allows mortgage payments to be cured and maintained but does not provide a discharge mechanism. Among other debts, section 1328(a) excepts any debt "provided for under section 1322(b)(5)" from discharge. 11 U.S.C. § 1328(a)(1). Bankruptcy treatises explain that 11 U.S.C. § 1322(b)(5) "does not enable the debtor to modify the terms of the debt, except to 'spread out' payment of the arrearages for a 'reasonable time.' i.e., the debtor must continue making payments as they come due under the original loan terms during the life of the plan and thereafter until fully paid." Kathleen P. March & Janet A. Shapiro, *The Rutter Group California Practice Guide: Bankruptcy* ¶ 13:443 (2023); *see also In re Polvorosa*, 621 B.R. 1, 13 (Bankr. D. Nev. 2020) ("Pursuant to § 1328(a)(1), long-term [mortgage] debt is not subject to discharge in a chapter 13 case."). Read in concert, sections 1322(b)(2), 1322(b)(5), and 1328(a)(1) compel the conclusion that "debts secured by a principal residence survive a Chapter 13 discharge." *Demay v. Wells Fargo Home Mortg., Inc.*, 279 F. Supp. 3d 1005, 1009 (N.D. Cal. 2017).

The Loan is a home mortgage debt treated under 11 U.S.C. § 1322(b)(5) in the Plan. As such, the Court agrees with the Bankruptcy Court that the Loan was not discharged on June 1, 2020, and payments on the Loan remained contractually due. Thus, Appellees' efforts to collect on the Loan did not violate the discharge injunction under 11 U.S.C. § 524(a).

Accordingly, the Court upholds the Bankruptcy Court's dismissal of Debtors' section 524(a) claim with prejudice.

## II. Debtors' Claim under 11 U.S.C. § 524(i)

Debtors also challenge the Bankruptcy Court's holding that Debtors failed to allege Appellees misapplied payments received "under the plan" pursuant to 11 U.S.C. § 524(i) because Debtors' claim was predicated on payments made to Appellees starting in October 2019, i.e., after the Plan payments ended.  (Mot. Dismiss Order at 1784, 1787.)  Section 524(i) provides:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

Thus, there are two requirements to establish a violation of section 524(i): (1) a willful failure to credit payments received under a confirmed plan and (2) material injury to the debtor.

Nothing in the language of section 524(i) restricts its application to discharged debts.  *See Anderson v. Wells Fargo Bank, N.A.*, No. 3:16-CV-2514-N, 2018 WL 3426269, at *5 (N.D. Tex. July 13, 2018); *Pompa v. Wells Fargo Home Mortg., Inc. (In re Pompa)*, No. 06-31759, 2012 WL 2571156, at *8 (Bankr. S.D. Tex. June 29, 2012) (holding that section 524(i) applies to any willful "failure to credit payments on debts not discharged under the plan").  "[I]f § 524(i) applied only to discharged debts, the provision would be superfluous" as "a failure to credit plan payments on discharged debts would violate the discharge injunction regardless of whether § 524(i) were enacted."  *In re Pompa*, 2012 WL 2571156, at *8; *see also Ridley v. M & T Bank (In re Ridley)*, 572 B.R. 352, 362 (Bankr. E.D. Okla. 2017).  Thus, although long-term mortgage debts are not typically discharged in bankruptcy, if a creditor willfully fails to

properly credit mortgage payments under a confirmed plan, section 524(i) treats such conduct as a violation of the discharge injunction.

"Deeming willful misapplication of plan payments a violation of the discharge injunction under § 524(i) does not impermissibly modify home mortgage lenders' rights in violation of § 1322(b)(2); it simply enforces the plan provisions and ensures that the completion of the plan will actually result in a fresh start for the debtor." *In re Pompa*, 2012 WL 2571156, at *8; *see also Mattox v. Wells Fargo, NA (In re Mattox)*, No. 07–51925, 2011 WL 3626762, at *7 (Bankr. E.D. Ky. Aug. 17, 2011) (noting in dicta in a case involving misapplication of home mortgage payments that section 524(i) "provides a clear remedy for misapplication once a discharge injunction is entered"). "Section 524(i) is a response to decisions in which courts questioned whether they had the ability to remedy a creditor's failure to credit payments properly" and clarifies "that a failure to properly credit plan payments that results in a post-discharge assertion that the debtor is in default is not simply a matter for state courts to resolve, but rather a critical issue that must be resolved by the bankruptcy court to ensure that the provisions and purposes of a plan are effectuated." 4 *Collier on Bankruptcy* ¶ 524.08 (Richard Levin & Henry J. Sommer eds., 16th ed. 2019).

Debtors argue that the payments they made after October 1, 2019 were, in fact, "under the plan" given that the Plan provided for the maintenance of ongoing monthly payments. (Debtors' Br. at 43–44.) Debtors also argue that the Bankruptcy Court erred in limiting its review and analysis to payments made by Debtors directly to Appellees after October 2019 (i.e., post-plan payments), as Debtors also provided evidence of the misapplication of payments prior to October 2019. (Debtors' Br. at 41; *see also* Debtors' Reply (ECF No. 13) at 10–14.)

The Court agrees with the Bankruptcy Court that the post-plan payments were not payments made "under the plan." In reviewing the plain language of the Plan, it is clear that the Plan provided for payments to be made by the Chapter 13 trustee directly to Appellees in order to cure and maintain the Loan, but there is no provision

11

dictating the payments to be made by Debtors after the Plan's end. (*See* Second Am. Plan at 242–43.) The case cited by Debtors in support of their argument, *Derham-Burk v. Mrdutt (In re Mrdutt)*, 600 B.R. 72 (9th Cir. B.A.P. 2019), is inapposite. While *In re Mrdutt* holds that post-petition payments may be made either directly by a debtor or through the trustee under a plan, it does not state that post-plan payments are also "under the plan." *See* 600 B.R. at 75, 77 ("[W]hen the chapter 13 plan provides for the curing of prepetition mortgage arrears and a debtor's direct postpetition maintenance payments in accordance with § 1322(b)(5), such direct payments are 'payments under the plan.'").

The Court also finds that the Bankruptcy Court did not err in limiting the court's review to post-plan payments. The majority of the FAC and Debtors' arguments were focused on the payments made directly by Debtors to Appellees after the Plan payments concluded. (*See, e.g.*, FAC at 1658 (alleging Appellees "refuse to credit all payments made directly by Valdellons' [sic] after October 1, 2019 to payments due on or after October 1, 2019" and "have applied payments received directly from [V]aldellons after October 1, 2019 to alleged payment due dates prior to October 1, 2019"); *id.* at 1649–50 (detailing payments made on or after October 1, 2019 to Appellees); *id.* at 1654–55 (alleging three checks paid after October 1, 2019 were applied to payments due prior to October 1, 2019).) The Court cannot fault the Bankruptcy Court for limiting its review accordingly.

However, Debtors' arguments and evidence cited in the FAC, as expounded on in their appellate briefings, also clearly raise concerns over Appellees' application of payments received from the trustee under the Plan. Debtors allege that they completed their Plan payments, yet the statements sent to them immediately after the Plan payments ended indicated significant arrears. For example, Debtors allege that "[e]ach of the monthly statements sent by Defendants to Plaintiffs from and after September 16, 2019 indicated significant 'past unpaid amount[s],'" such as the September 16, 2019 monthly mortgage statement, which "reflected a 'past unpaid

12

1    amount' in the amount of $16,183.86" but a "summary of amounts past due before
2    bankruptcy filing [reflecting] a current balance of $0.00." (*See* FAC at 1651; *see also*
3    Debtors' Br. at 28–29 (providing the post-petition arrears alleged on the monthly
4    statements sent both before and after October 2019, which show large alleged post-
5    petition delinquencies despite evidence reflecting post-petition monthly payments
6    were paid by the trustee through September 2019); *id.* at 41 (arguing Debtors have
7    provided evidence of the "misapplication of payments prior to October 1, 2019 in the
8    form of monthly statements and accountings").)
9         Appellees argue the payments made by the trustee were not misapplied.
10   (Appellees' Br. at 26–27.)  Rather, Appellees argued at the hearing that there were
11   outstanding amounts due when the Plan finished because Claim 9-1 and the Debtors'
12   confirmed Chapter 13 bankruptcy plans underreported the pre-petition arrears and
13   monthly Loan payments, so Debtors were underpaying throughout the bankruptcy.
14   (*See also* Reply Supp. Mot. Dismiss at 1773–74 ("Defendants applied the amounts
15   received to the appropriate post-petition monthly payments and acknowledged they
16   received from the trustee all payments the trustee was supposed to make under the
17   Plan, but that nonetheless left a sizeable amount due when the bankruptcy ended.").)
18   This alleged underreporting appears to stem, at least in part, from the fact that
19   Debtors' first bankruptcy plan reported monthly payments at $1,784.42 (*see* First Plan
20   at 81), an amount that was not raised until Appellees filed their first Notice of
21   Mortgage Payment Change over two years later (*see* ECF No. 7-94 (Oct. 28, 2016).)
22        Appellees' arguments do not sway the Court in their favor.  First, the Court
23   notes that if the pre-petition arrearage amount was underreported, then Appellees
24   would have needed to allocate more than $19,140.48, the arrearage amount listed in
25   Claim 9-1, towards pre-petition arrears while the Plan was in place in order to report a
26   "summary of amounts past due before bankruptcy filing" at "a current balance of
27   $0.00" on September 16, 2019. (*See* FAC at 1651; *see also* Ex. 23 in Support of
28   Compl. (ECF No. 7-110) at 1083.)  The September 16, 2019 statement itself confirms

this, as it states $20,623.04 was paid during the bankruptcy towards pre-petition arrears. (Ex. 23 in Support of Compl. at 1083.) Debtors did not begin sending payments directly to Appellees until October 2019, after the September statement confirmed that the pre-petition arrears had been paid off. (FAC at 1649–50.) This indicates the trustee's payments under the Plan may have been misapplied as portions of the payments intended to keep the Loan current during the bankruptcy were instead applied towards arrears. (*See* Debtors' Br. at 21.)

To make matters worse, Appellees also failed to properly inform Debtors they were underpaying during the bankruptcy. The terms of the Plan provided for the cure of arrearages on the Loan and maintenance payments to keep the Loan current. (*See* Second Mod. Plan at 243.) The Plan clearly stated that if "the amount specified in the plan is incorrect, the Class 1 creditor may demand the correct amount in its proof of claim", and if "a Class 1 creditor files a proof of claim or a notice of payment change pursuant to Fed. R. Bankr. P. 3002.1(b) demanding a higher or lower post-petition monthly payment, the plan payment shall be adjusted accordingly." (*Id.* at 242.) Thus, if the arrearage and monthly Loan payments were underreported, Appellees were given a clear opportunity to petition for an adjustment to those amounts during the bankruptcy. Indeed, the record shows that Appellees did exactly that, filing no less than seven Notice of Mortgage Payment Changes before Debtors were granted a discharge on June 1, 2020. (*See* ECF Nos. 7-94 (Oct. 28, 2016), 7-95 (Jan. 25, 2017), 7-96 (May 3, 2017), 7-97 (Jan. 26, 2018), 7-98 (Apr. 5, 2018), 7-99 (Mar. 31, 2019), 7-102 (Apr. 21, 2020).) Given this, it is astounding that Appellees now assert "[j]ust because [we] were bound to accept insufficient payments while the Plan was in effect does not mean that the other amounts due and owing simply disappeared." (Reply Supp. Mot. Dismiss at 1773–74.) Appellees were not bound to accept insufficient payments. They could have filed an amended proof of claim, but failed to do so, and failed to file any notice of payment change until two years after Debtors filed for bankruptcy. Thus, the fault for any underpayment lies with Appellees, not Debtors.

Finally, and perhaps most egregiously, at the end of the bankruptcy Appellees responded to the trustee's Notice of Final Cure and acknowledged that Debtors "have paid in full amount required to cure the prepetition default on the creditor's claim" and were current on the Loan. (Notice Final Cure; Resp. to Notice Final Cure.) Thus, Appellees argument now that they were underpaid while the Plan was in place directly contradicts their own Response to Notice of Final Cure, and ignores settled law that the terms of a confirmed Chapter 13 plan "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a); *see also Max Recovery v. Than (In re Than)*, 215 B.R. 430, 435 (9th Cir. BAP 1997) ("Another way of looking at the binding effect of confirmation is that the plan is a contract between the debtor and the debtor's creditors."). Appellees were and are bound by the Plan, the terms of which cured Debtors pre-petition arrearages and positioned Debtors to exit bankruptcy current on their Loan. (*See* Second Mod. Plan at 242–43 ("All arrears on Class 1 claims shall be paid in full by Trustee . . . [o]ther than to cure of arrears, this plan does not modify Class 1 claims.").)

In sum, the evidence shows that Appellees were aware of the Plan's terms, and were aware that they could file an amended proof of claim or notice of payment change, but instead allocated $20,623.04 of Plan payments towards pre-petition arrears despite clear provisions that only $19,140.48 was to be paid, thereby misapplying payments intended to keep the Loan current. This indicates that Appellees' misapplication of payments was likely willful. *See In re Ridley*, 572 B.R. 352, 361–2 (Bankr. E.D. Okla. May 31, 2017) (explaining the "requirement of willfulness is simply an intent to commit the act; it does not require a specific intent to violate the Code or plan provisions" and "only requires a showing that the creditor intended to credit payments improperly"); 4 *Collier on Bankruptcy* ¶ 524.08 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Absent a creditor's proof that the improper

15

crediting was a mistake in conflict with the creditor's normal procedures, the creditor should be presumed to have intended its acts.").

Finally, Debtors have alleged that this willful misapplication of Plan payments caused them harm in the form of additional fees, costs, and expenses. (FAC at 1660–62.)

Thus, the Court holds that Debtors' allegations are sufficient to find that Debtors may have a cause of action under section (i) for the misapplication of payments made by the trustee under the Plan. Indeed, this is:

> [O]ne of the classic situations that led to the adoption of § 524(i): a chapter 13 debtor makes all the required payments on long-term debt required through the life of his confirmed plan, receives a discharge, and is then told that his mortgage is in default, he owes additional charges, and is threatened with foreclosure. Often, this is the same scenario that drove him to bankruptcy in the first place. Section 524(i) presents a remedy for such cases.

*In re Ridley*, 572 B.R. at 361. Numerous courts construing section 524(i) have applied it in similar situations to the one at hand, where a debtor successfully completed a Chapter 13 case, but a long-term home mortgage creditor refused to acknowledge that the loan was current. *See id.* at 366 (finding a mortgagor violated section 524(i) when a debtor completed all plan payments, thereby curing his default, and was discharged by the bankruptcy court, yet the mortgagor "continued to report him in default, added unexplained charges, sent numerous statements and made phone calls to [debtor] notifying him that his mortgage was in default"); *In re Pompa*, 2012 WL 2571156, at *1–2, 7–8 (finding that creditors actions violated section 524(i) when debtors allegedly cured all arrears on their mortgage through a Chapter 13 plan, were deemed current by the bankruptcy court, and were granted a discharge, but the creditor subsequently alleged they were delinquent on their mortgage payments and threatened foreclosure because the creditor misapplied payments and improperly charged them undisclosed fees during the pendency of their Chapter 13 plan); *In re Houston*, No. 3:13-bk-7435-PMG, 2018 WL 11206276, at *2–4 (Bankr. M.D. Fla. May

15, 2018) (declining to dismiss debtors' section 524(i) claim when they alleged that "their confirmed Plan provided for payment of the regular mortgage amounts and for payment of the prepetition arrearage," "that they complied with the Plan in all respects and the Court entered a Discharge," "that the payments were misapplied during the plan period," and that the creditor "asserted that the mortgage was in default at the time of Discharge and threatened to foreclose on their home").

The Bankruptcy Court has not yet considered Debtors' allegations that payments made by the trustee under the Plan were misapplied and should give rise to a section 524(i) claim. While the Bankruptcy Court dismissed Debtors' section 524(i) claim with prejudice, as discussed below, the Court will grant Debtors leave to amend so that the Bankruptcy Court may consider their arguments in the first instance.

### III.   Dismissal with Prejudice

The Bankruptcy Court dismissed Debtors' Count 1 with prejudice, reasoning that Debtors failed to state a claim under either section 524(a) or 524(i), and noting that Debtors had not requested leave to amend. (Mot. Dismiss Order at 1788.) The Bankruptcy Court also dismissed Debtors' claims for intentional infliction of emotional distress (Count 2) and negligent infliction of emotional distress (Count 3) with prejudice because they were based on the same factual conduct alleged in Count 1. (*Id.*) Debtors remaining claims, for breach of contract or declaratory relief regarding their rights under their contract (Count 3) and unfair business acts and practices (Count 4) were dismissed without prejudice to refiling them in state court. (*Id.* at 1794.)

The standard of review for a court's decision to dismiss a complaint is de novo, while the standard of review for a court's decision to dismiss without leave to amend is abuse of discretion. *AE*, 666 F.3d at 636; *In re Tracht Gut, LLC*, 503 B. R. at 810. A court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support from evidence in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

As the Ninth Circuit has explained, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Pursuant to Federal Rule of Civil Procedure 15, made applicable to Bankruptcy Courts by Federal Rule of Bankruptcy Procedure 7015, leave to amend a complaint should be freely given when justice so requires. *See* Fed. R. Civ. P. 15; Fed. R. Bankr. P. 7015 ("Rule 15 F. R. Civ. P. applies in adversary proceedings."). The Ninth Circuit has repeatedly held that a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). A "court may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party . . . .'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). However, a "court's failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion." *Eminence Capital*, 316 F.3d at 1052.

Here, the Bankruptcy Court did not provide a reason for dismissing Plaintiff's section 524(i) claim with prejudice other than that leave to amend was not requested. However, as held above, Debtors may have a viable claim under section 524(i). Thus, granting leave to amend would not be futile. Debtors have also requested leave to amend in their appellate papers.[5] (Debtors' Br. at 40.) Accordingly, this Court finds

---

[5] Appellees cite to *Alaska v. United States*, 201 F.3d 1154 (9th Cir. 2000) for the proposition that where "a party does not ask the district court for leave to amend, 'the request [on appeal] to remand with instructions to permit amendment comes too late.'" *Id.* at 1163–64. However, the court in *Alaska* considered defendant's appeal of a judgment on the pleadings, not dismissal, and the court denied defendant leave to amend its answer because it did not request leave even "after it lost in district court on navigability, and filed a motion for reconsideration . . . [sticking] so firmly to its contention that it did

that the Bankruptcy Court abused its discretion in dismissing Debtors' section 524(i) claim with prejudice. The Court will grant Debtors leave to amend their FAC within 30 days and will remand to the Bankruptcy Court for further proceedings.

In addition, whereas Debtors' related state law claims for intentional infliction of emotional distress (Count 2) and negligent infliction of emotional distress (Count 3) were also dismissed with prejudice based on dismissal of Count 1, the Court will grant leave to amend on those claims as well.

## CONCLUSION

For the reasons set forth above, the Court hereby:

1. AFFIRMS the Bankruptcy Court's dismissal of Debtors' section 524(a) claim with prejudice;
2. REVERSES the Bankruptcy Court's dismissal of Debtors' section 524(i) claim with prejudice;
3. REVERSES the Bankruptcy Court's dismissal of Debtors' related state law claims for intentional infliction of emotional distress and negligent infliction of emotional distress with prejudice;
4. GRANTS Debtors leave to amend their FAC within 30 days as to their section 524(i) claim (Count 1) and state law claims (Counts 2–4);
5. REMANDS this matter to the Bankruptcy Court for further proceedings consistent with this order; and
6. DIRECTS the Clerk of Court to close this case.

IT IS SO ORDERED.

Dated:  **February 2, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

---

not have to answer the navigability averment, that it never asked for permission to answer the averment even after the district court decided it had to answer." *Id.* at 1163. Debtors here seek amendment of their complaint, not an answer, and there is no indication that they failed to request amendment multiple times (such as in a motion for reconsideration). Thus, the Court declines to follow *Alaska* here.